IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-506

LAURA VOEPEL,

Plaintiff,

v.

REUBEN CREWS, COLORADO SPRINGS POLICE DEPARTMENT SERGEANT;
MATTHEW ANDERSON, COLORADO SPRINGS POLICE DEPARTMENT OFFICER;
TIMOTHY HOCKERSMITH, COLORADO SPRINGS POLICE DEPARTMENT OFFICER;
PETER MANDRY, COLORADO SPRINGS POLICE DEPARTMENT OFFICER; AND
REBECCA JOINS, COLORADO SPRINGS POLICE DEPARTMENT DETECTIVE,

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Laura Voepel, by and through her counsel, Jason M. Kosloski of KOSLOSKI LAW, PLLC, respectfully alleges for her Complaint and Jury Demand as follows:

### INTRODUCTION

1. On November 20, 2022, Ms. Voepel was at her home in Colorado Springs. Unbeknownst to Ms. Voepel, her son, Anderson Aldrich, had just committed a serious crime. Ms. Voepel had nothing to do with her son's actions that night.

2. In their zeal to investigate the tragic events of the night, the Defendants ran roughshod over Ms. Voepel's constitutional rights.

3. Defendants searched Ms. Voepel's home without consent or a search warrant. Defendants refused to leave the home when Ms. Voepel revoked consent for Defendants to be there. Defendants locked Ms. Voepel out of her own home when Defendants had no lawful

1

authority to be present in the home. Then, when Ms. Voepel (completely understandably) became emotional about her son, and the Defendant's unconstitutional actions, Defendants concocted a plan to falsely arrest Ms. Voepel for disorderly conduct to get rid of her. Defendants did arrest Ms. Voepel, and in the process used excessive force.

4. Ms. Voepel brings this complaint to seek justice for the Defendant's blatantly unconstitutional search of her home, the pretextual arrest that the Defendants subjected her to so they could continue to justify their search, and the unconstitutional prosecution that the Defendants set in motion which required Ms. Voepel to spend nearly two years being traumatized before the case was finally dismissed.

5. In other words, Ms. Voepel hopes that this case brings her some justice and sends a message that no matter how tragic the events leading to a police investigation may be, the police may not disregard the constitutional rights of any citizen.

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution, and 42 U.S.C. § 1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is invoked pursuant to U.S.C. §§ 1331, 1343, and 2201. Supplemental jurisdiction over state law claims is conferred by 28 U.S.C. § 1367 because the violations of federal law alleged are substantial and the pendent causes of action derive from a common nucleus of operative facts.

7. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All the events alleged herein occurred in the State of Colorado, and all the individual parties were residents

of and domiciled in the State of Colorado at the time of the events giving rise to this Complaint.

8. Ms. Voepel acknowledges that CRS § 13-80-102(1) ordinarily requires this action "be commenced within two years after the cause of action accrues, and not thereafter." However, Ms. Voepel is entitled to tolling of this timeframe because she suffers from a mental disease or defect and was found to be incompetent to proceed to trial for much of those two years. Additionally, she is entitled to equitable tolling because the Defendants impeded her ability to pursue this case through charging her with crimes that were ultimately dismissed. Further, Ms. Voepel's lengthy period of legal incompetency is an extraordinary circumstance that justifies equitable tolling.

## PARTIES

9. Laura Voepel is the Plaintiff. At all relevant times Ms. Voepel was a resident of Colorado and a citizen of the United States. Plaintiff Voepel is presently a resident of Florida. Plaintiff Voepel will be referred to as Plaintiff or Ms. Voepel.

10. Defendant Reuben Crews is, upon information and belief, a resident of Colorado and a citizen of the United States. At all relevant times, Defendant Crews was employed by the City of Colorado Springs as a peace officer and was acting under the color of state law. Defendant Crews is sued in his personal capacity.

11. Defendant Matthew Anderson is, upon information and belief, a resident of Colorado and a citizen of the United States. At all relevant times, Defendant Anderson was employed by the City of Colorado Springs as a peace officer and was acting under the color of state law. Defendant Anderson is sued in his personal capacity.

12. Defendant Timothy Hockersmith is, upon information and belief, a resident of Colorado and a citizen of the United States. At all relevant times, Defendant Hockersmith was employed by the City of Colorado Springs as a peace officer and was acting under the color of state law. Defendant Hockersmith is sued in his personal capacity.

13. Defendant Peter Mandry is, upon information and belief, a resident of Colorado and a citizen of the United States. At all relevant times, Defendant Mandry was employed by the City of Colorado Springs as a peace officer and was acting under the color of state law. Defendant Mandry is sued in his personal capacity.

14. Defendant Rebecca Joins is, upon information and belief, a resident of Colorado and a citizen of the United States. At all relevant times, Defendant Joins was employed by the City of Colorado Springs as a peace officer and was acting under the color of state law. Defendant Joins is sued in her personal capacity.

## Factual Allegations

15. On November 19, 2022, Ms. Voepel was sitting at home. It was a normal, peaceful night.

16. Unbeknownst to Ms. Voepel, her son had left and committed a horrific shooting at Club Q in Colorado Springs. Aldrich was in custody after the shooting. But Ms. Voepel didn't know anything about that, she was just getting ready for bed.

17. At approximately two o'clock in the morning of November 20, 2022, Defendant Anderson and other Colorado Springs Police Officers, including Defendants Mandry and Joins, started looking to see if they could find where Aldrich lived.

18. In that search they went to Ms. Voepel's house at approximately 3:17AM on November 20, 2022.

19. When Defendants Anderson, Mandry, and Joins arrived, they briefly spoke with Ms. Voepel. Ms. Voepel initially invited them inside her home. There was no warrant to search Ms. Voepel's home or to seize anything from inside the home.

20. Shortly after entering Ms. Voepel's home, Defendant Anderson started searching the house without Ms. Voepel's permission.

21. Ms. Voepel told Defendant Anderson that she was not giving him permission to be anywhere else in the house other than immediately inside the front door. Defendant Anderson disregarded that restriction and continued to search Ms. Voepel's house. Defendants Mandry and Joins stood by and blocked Ms. Voepel's movement through her home to assist Defendant Anderson in his warrantless search. Defendants Mandry and Joins assisted Defendant Anderson in his search. Defendants Mandry and Joints did not intervene against Defendant Anderson's search.

22. Ms. Voepel told Defendants Anderson, Mandry, and Joins that they were no longer welcome in her home and that they needed to leave. Despite being aware that they did not have permission to remain in Ms. Voepel's home, Defendants Anderson, Mandry, and Joins remained in Ms. Voepel's home.

23. Subsequently, Defendant Crews arrived. Defendant Crews was aware that he did not have permission to be inside of Ms. Voepel's home, that there was no warrant to search Ms. Voepel's home, and that Ms. Voepel had revoked consent for any law enforcement officer to be in her home. Defendant Crews entered Ms. Voepel's home and remained in her home.

24. Defendant Crews was a supervising officer and could order Defendants Anderson, Mandry, and Joins to leave Ms. Voepel's home. Defendant Crews did not take any steps to intervene against the unlawful search of Ms. Voepel's home or the unlawful seizure of Ms. Voepel.

25. Defendant Hockersmith arrived at Ms. Voepel's home. Defendant Hockersmith knew that there was not a warrant to search Ms. Voepel's home or seize Ms. Voepel. Defendant Hockersmith knew that Ms. Voepel had revoked all consent for law enforcement officers to be present in her home. Defendant Hockersmith entered Ms. Voepel's home and assisted Defendants Anderson, Mandry, Joins, and Crews in detaining Ms. Voepel in her own home. Defendant Hockersmith did not take any steps to intervene against the unlawful search of Ms. Voepel's home or the unlawful seizure of Ms. Voepel.

26. Throughout all of this, Defendants Anderson, Mandry, Joins, Crews, and Hockersmith restrained Ms. Voepel's freedom of movement inside of her own home.

27. Defendants Anderson, Mandry, Joins, Crews, and Hockersmith all directly participated in the unlawful search of Ms. Voepel's home and the attendant seizure of Ms. Voepel inside of her home.

28. Finally, Defendant Crews ordered the other Defendants to lock Ms. Voepel outside of her home. Defendant Hockersmith locked Ms. Voepel outside of her home. Officers, including Defendants Hockersmith remained inside of Ms. Voepel's residence after locking her outside.

29. It was approximately ten degrees Fahrenheit outside and Ms. Voepel was barefoot and not dressed for the weather. Ms. Voepel was on oxygen.

30. At no point during this entire encounter was there a warrant to search Ms. Voepel's home.

31. After Ms. Voepel was locked outside of her own home, she understandably became upset.

32. Defendants determined that they would concoct a plan to arrest Ms. Voepel for disorderly conduct so that they could get rid of the nuisance that she was causing them by not allowing them to search her home.

6

33. Defendants knew that they did not have probable cause to arrest Ms. Voepel for disorderly conduct.

34. Defendants knew that they did not have probable cause to arrest Ms. Voepel for disorderly conduct because the noise she was making was objectively reasonable given that she had just been told that her son was being arrested for a serious crime, the circumstances surrounding that crime, that numerous police officers were currently running roughshod over her constitutional rights, and the fact that she had just been locked out of her own home by police officers who had no legal authority to be present in her home.

35. Defendants knew that they did not have probable cause to arrest Ms. Voepel for disorderly conduct because they had created the situation that they believed was disorderly.

36. Defendants knew that they did not have probable cause to arrest Ms. Voepel for disorderly conduct because she was not in a public place nor near a private residence that she had no right to occupy. Ms. Voepel was in the curtilage of her home and had every right to occupy her home (unlike Defendants).

37. Defendants, including at least Defendants Anderson and Crews, used excessive force in arresting Ms. Voepel. They then covered up their use of excessive force by falsely claiming that Ms. Voepel had resisted arrest.

38. Defendants arrested Ms. Voepel and placed her on an M1 hold.

39. Ms. Voepel was forced to defend against the false disorderly conduct and resisting arrest charges that Defendants placed on her.

40. During her criminal proceedings (El Paso County case 22M7363), Ms. Voepel was found to be incompetent to proceed. After two years, Ms. Voepel's case was dismissed following many months of restoration services were attempted and multiple doctors opined that she

was incompetent to proceed. Some of the major evaluations relevant to Ms. Voepel's competency to proceed are detailed:

a.  On July 14, 2023, Dr. Katelyn Hernandez completed a competency evaluation where she diagnosed Ms. Voepel with Major Depressive Disorder, Posttraumatic Stress Disorder, and Unspecified Anxiety Disorder. Dr. Hernandez rendered an opinion that Ms. Voepel "does have a mental disability or developmental disability that prevents her from having sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding in order to assist in her defense or prevents her from having a rational and factual understanding of the criminal proceedings."

b.  On November 24, 2023, Dr. David Shapiro opined that "it appears that there has been a significant degree of deterioration on Ms. Voepel's part since the time of her evaluation by Doctor Hernandez" and "it is my opinion that Ms. Voepel has decompensated to an extreme degree since the time of her previous evaluation with Doctor Hernaandez."

c.  On March 25, 2024, Dr. David Shapiro conducted an evaluation of Ms. Voeple that led him to conclude that ". . . Ms. Voepel remains incompetent to stand trial."

d.  On November 22, 2024, Dr. Charles Ewing opined that "she continues to lack the capacity to make reasoned decisions about her case, continues to be extremely unlikely to be capable of testifying relevantly on her own behalf, and remains extremely likely to behave inappropriately and be disruptive in court" and "it is also my opinion to a reasonable degree of professional certainty that she is not only 'incompetent to proceed' as that status is defined in Colorado law, but that there is

no substantial probability that she will be (or even could be) restored to competency in the foreseeable future.

41. Ms. Voepel's criminal case was not dismissed until after the statute of limitations passed in this case. For nearly the entire period of the statute of limitations, Ms. Voepel was opined by multiple doctors to suffer from a significant mental disease or defect that rendered her incompetent to proceed.

### STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983 – 4th Amendment**
**Unconstitutional Seizure**
**(Against All Defendants)**

42. Plaintiff incorporates all other paragraphs as if fully set forth herein.

43. At all times relevant to this complaint, Defendants acted under color of state law and within the course and scope of their employment as peace officers with the Colorado Springs Police Department.

44. Plaintiff had a protected interest under the Fourth Amendment to the United States Constitution in being secure in her person and property from unreasonable seizures by law enforcement personnel.

45. Defendants, acting in concert with one another, unreasonably seized Ms. Voepel and her home in violation of the Fourth Amendment.

46. Defendants did not have probable cause or reasonable suspicion, or any other legally valid basis, to believe that Ms. Voepel had committed, was committing, or was about to commit any violation of the law.

47. Defendants did not have a warrant to seize Ms. Voepel or her home.

48. Defendants violated Ms. Voepel's federal constitutional rights by engaging in an unlawful seizure of Ms. Voepel and her home that was objectively unjustified in light of the facts and circumstances confronting Defendants.

49. Defendants seized Ms. Voepel's home.

50. Defendants seized Ms. Voepel while she was within her own home, by restricting her ability to reenter her home, and by arresting her and placing her on an M1 hold.

51. Defendants engaged in a collective plan or effort to seize Ms. Voepel without probable cause, reasonable suspicion, or another valid legal basis or, alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful seizure of Ms. Voepel, despite being in a position and having the opportunity to do so.

52. Each Defendant is therefore liable for the damages resulting from the objectively unlawful and unjustified seizure of Ms. Voepel.

53. Defendants subjected or caused Ms. Voepel to be subjected to the deprivation of her individual rights secured by the bill of rights of the United States Constitution.

54. Defendants violated clearly established law at the time about which every reasonable officer would have known.

55. The acts or omissions of the Defendants were the moving force behind, and the proximate cause of, injuries sustained by Ms. Voepel.

56. Defendants' conduct described herein was attended by circumstances of malice, or willful and wonton conduct, which the Defendants must have realized was dangerous, or was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Ms. Voepel.

**SECOND CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983 – 4th Amendment**
**Unconstitutional Search**
**(All Defendants)**

57. Plaintiff incorporates all other paragraphs as if fully set forth herein.

58. At all times relevant to this complaint, Defendants acted under color of state law and within the course and scope of their employment as peace officers with the Colorado Springs Police Department.

59. Plaintiff had a protected interest under the Fourth Amendment to the United States Constitution in being secure in her home from unreasonable searches by law enforcement personnel.

60. Defendants, acting in concert with one another, unreasonably searched Ms. Voepel's home in violation of the Fourth Amendment.

61. Defendants did not have a warrant to search Ms. Voepel's home.

62. Ms. Voepel did not consent to the search of her home.

63. Ms. Voepel expressly revoked consent for Defendants to be present in her home.

64. Defendants violated Ms. Voepel's federal constitutional rights by engaging in an unlawful search of Ms. Voepel's home that was objectively unjustified in light of the facts and circumstances confronting Defendants.

65. Defendants engaged in a collective plan or effort to search Ms. Voepel's home without a warrant or another valid legal basis or, alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful search of Ms. Voepel's home, despite being in a position and having the opportunity to do so.

66. Each Defendant is therefore liable for the damages resulting from the objectively unlawful and unjustified search of Ms. Voepel's home.

67. Defendants subjected or caused Ms. Voepel to be subjected to the deprivation of her individual rights secured by the bill of rights of the United States Constitution.

68. Defendants violated clearly established law at the time about which every reasonable officer would have known.

69. The acts or omissions of the Defendants were the moving force behind, and the proximate cause of, injuries sustained by Ms. Voepel.

70. Defendants' conduct described herein was attended by circumstances of malice, or willful and wonton conduct, which the Defendants must have realized was dangerous, or was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly Ms. Voepel.

### THIRD CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983 – 1st Amendment
### Retaliation
### (All Defendants)

71. At all times relevant to this complaint, Defendants were "persons," acted under color of state law, and within the course and scope of their employment as peace officers with the Colorado Springs Police Department.

72. Plaintiff was engaged in First Amendment-protected expression by voicing her lack of consent for Defendants to be present in her home, and in voicing her displeasure with Defendants for violating her constitutional rights.

73. Plaintiff's expression was on a matter of public concern and did not violate any law.

74. Plaintiff's expression occurred at a traditional public forum.

75. Defendants jointly and on their own accord, responded to Plaintiff's First Amendment protected activity with retaliation.

76. Defendants' retaliatory actions against Plaintiff were a content-and/or viewpoint-based restriction on speech.

77. Defendant's retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

78. Defendant's retaliatory actions were substantially motivated by Plaintiff's exercise of her First Amendment Rights.

79. At the time when Defendants retaliated against Plaintiff for exercising her First Amendment rights, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

80. Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

81. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

82. The acts or omissions of the Defendants were the moving force behind, and the proximate cause of, injuries sustained by Ms. Voepel.

**FOURTH CLAIM FOR RELIEF**
**Violation of Article II, Section 7 of the Colorado Constitution and CRS § 13-21-131**
**Unconstitutional Seizure**
**(All Defendants)**

83. At all times relevant to this complaint, Defendants acted under color of state law and within the course and scope of their employment as peace officers with the Colorado Springs Police Department.

84. Plaintiff had a protected interest under Article II, Section 7 of the Colorado Constitution in being secure in her person from unreasonable seizures by law enforcement personnel.

85. Defendants, acting in concert with one another, unreasonably seized Ms. Voepel's home and seized her person in violation of Article II, Section 7 of the Colorado Constitution.

86. Defendants did not have a warrant to seize Ms. Voepel's home or Ms. Voepel.

87. Defendants seized Ms. Voepel's home.

88. Defendants seized Ms. Voepel while she was within her own home, by restricting her ability to reenter her home, and by arresting her and placing her on an M1 hold.

89. Defendants engaged in a collective plan or effort to seize Ms. Voepel and her home without a warrant or another valid legal basis or, alternatively, each Defendant failed to take reasonable steps to intervene in the other Defendant's unlawful seizure of Ms. Voepel and her home, despite being in a position and having the opportunity to do so.

90. Each Defendant is therefore liable for the damages resulting from the objectively unlawful and unjustified seizure of Ms. Voepel and her home.

91. Defendants subjected or caused Ms. Voepel to be subjected to the deprivation of her individual rights secured by Article II, Section 7 of the Colorado Constitution.

92. Defendants are not entitled to any statutory immunity or statutory limitations of liability, damages, or attorney's fees pursuant to CRS 13-21-131(2)(a).

93. Defendants are not entitled to any qualified immunity or "common law immunity" as a defense to liability pursuant to CRS 13-21-131(2)(b).

94. As a direct and proximate result of Defendants' actions, Ms. Voepel suffered damages, including physical injuries, plain and suffering, emotional distress, and other damages to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### Violation of Article II, Section 7 of the Colorado Constitution and CRS § 13-21-131
### Unconstitutional Seizure
### (All Defendants)

95. At all times relevant to this complaint, Defendants acted under color of state law and within the course and scope of their employment as peace officers with the Colorado Springs Police Department.

96. Plaintiff had a protected interest under Article II, Section 7 of the Colorado Constitution in being secure in her person from unreasonable seizures by law enforcement personnel.

97. Defendants, acting in concert with one another, unreasonably seized Ms. Voepel in violation of Article II, Section 7 of the Colorado Constitution.

98. Defendants did not have a warrant to seize Ms. Voepel.

99. Defendants did not have probable cause or reasonable suspicion to believe that Ms. Voepel had committed, was committing, or was about to commit, any crime.

100. Defendants violated Ms. Voepel's Colorado constitutional rights by unlawfully seizing her.

101. Defendants engaged in a collective plan or effort to seize Ms. Voepel without a warrant or another valid legal basis or, alternatively, each Defendant failed to take reasonable steps to

intervene in the other Defendant's unlawful seizure of Ms. Voepel, despite being in a position and having the opportunity to do so.

102. Each Defendant is therefore liable for the damages resulting from the objectively unlawful and unjustified seizure of Ms. Voepel.

103. Defendants subjected or caused Ms. Voepel to be subjected to the deprivation of her individual rights secured by Article II, Section 7 of the Colorado Constitution.

104. Defendants are not entitled to any statutory immunity or statutory limitations of liability, damages, or attorney's fees pursuant to CRS 13-21-131(2)(a).

105. Defendants are not entitled to any qualified immunity or "common law immunity" as a defense to liability pursuant to CRS 13-21-131(2)(b).

106. As a direct and proximate result of Defendants' actions, Ms. Voepel suffered damages, including physical injuries, plain and suffering, emotional distress, and other damages to be determined at trial.

107. The acts or omissions of Defendants were the moving force behind, and the proximate cause of, injuries sustained by Ms. Voepel.

### SIXTH CLAIM FOR RELIEF
### Violation of Article II, Section 10 of the Colorado Constitution and CRS § 13-21-131
### Freedom of Speech
### (All Defendants)

108. Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

109. Defendants acted under color of state law, and within the course and scope of their employment, in their capacity as law enforcement officers at all times relevant to the allegations in this Complaint.

110. Defendants are "peace officers[,]" as defined by C.R.S. § 16-2.5-102, and, therefore, is subject to suit under C.R.S. § 13-21-131.

111. The Free Speech Clause to the Colorado Constitution provides that "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact." Colo. Const. Art. II, Section 10.

112. The free speech rights protected by Colo. Const. Art. II; Section 10 are more expansive than those protected by the First Amendment to the United States Constitution.

113. Plaintiff were engaged in protected speech.

114. Plaintiff's speech was on a matter of public concern and did not violate any law.

115. Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

116. Defendants' conduct would chill a person of ordinary firmness from exercising his free speech rights.

117. Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech.

118. Plaintiff's speech occurred at a traditional public forum.

119. Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the protected rights of Plaintiff.

120. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic

damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

### SEVENTH CLAIM FOR RELIEF
**Violation of Article II, Section 10 of the Colorado Constitution and CRS § 13-21-131**
**Retaliation**
**(All Defendants)**

121. Plaintiff hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

122. Defendants acted under color of state law, and within the course and scope of their employment, in their capacity as a law enforcement officer at all times relevant to the allegations in this Complaint.

123. Plaintiff brings these claims in good faith for the express purpose of extending and/or modifying existing precedent relating to C.R.S. § 13-21-131.

124. Defendants are "peace officers[,]" as defined by C.R.S. § 16-2.5-102, and, therefore, is subject to suit under C.R.S. § 13-21-131.

125. The Free Speech Clause to the Colorado Constitution provides that "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact." Colo. Const. Art. II, Section 10.

126. The free speech rights protected by Colo. Const. Art. II; Section 10 are more expansive than those protected by the First Amendment to the United States Constitution.

127. Plaintiff was engaged in protected speech.

128. Plaintiff's speech was on a matter of public concern and did not violate any law.

129. Defendants' conduct would chill a person of ordinary firmness from exercising her free speech rights.

130. Defendants' conduct was a content-and/or viewpoint-based restriction on Plaintiff's speech.

131. Plaintiff's speech occurred at a traditional public forum.

132. Defendants responded to Plaintiff's protected speech activity with retaliation.

133. Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of his free speech rights.

134. Defendants sought to punish Plaintiff for exercising his free speech rights, to silence his future speech, to stop him from continuing to speak, and to restrict his freedom of expression, along with the future speech and expression of others.

135. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in protected free speech activity.

136. Defendants' conduct was motivated by evil motive or intent and/or involved reckless or callous indifference to the protected rights of Plaintiff.

137. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

138. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff Laura Voepel respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law and equity, including but not limited to:

    a.  A judgment that the acts of Defendants described herein violated the United States and Colorado constitutions;

    b.  Injunctive relief, as appropriate;

    c.  Compensatory damages according to proof at trial, including but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, emotional distress, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

    d.  Punitive or exemplary damages for all claims as allowed by law in an amount to be determined at trial;

    e.  Attorney's fees and costs;

    f.  Pre-judgment and post-judgment interest at the highest possible rate; and

    g.  Such further relief as the Court may deem just, proper, and appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated: February 18, 2025

/s/ Jason M. Kosloski
Jason M. Kosloski (CO Bar # 50214)
KOSLOSKI LAW, PLLC
1401 Lawrence Street
Suite 1600
Denver, CO 80202
(720) 605-6487
jkosloski@kosloskilaw.com
*Attorney for Plaintiff Laura Voepel*