## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No: 25-cv-506-DDD-KAS

LAURA VOEPEL,

    Plaintiff,

v.

REUBEN CREWS, COLORADO SPRINGS POLICE DEPARTMENT SERGEANT;
MATTHEW ANDERSON, COLORADO SPRINGS POLICE DEPARTMENT OFFICER;
TIMOTHY HOCKERSMITH, COLORADO SPRINGS POLICE DEPARTMENT OFFICER;
PETER MANDRY, COLORADO SPRINGS POLICE DEPARTMENT OFFICER; AND
REBECCA JOINS, COLORADO SPRINGS POLICE DEPARTMENT DETECTIVE,

    Defendants.

## MOTION TO DISMISS

Defendants, Reuben Crews, Matthew Anderson, Timothy Hockersmith, Peter Mandry and Rebecca Joines, hereby move to dismiss the complaint and state in support as follows:

**Certification Pursuant to D.C.COLO.LCivR 7.1(b)(2) and DDD Civ. P.S. (III)(D)(1)**: The undersigned has conferred with opposing counsel. The undersigned is authorized to state the motion is opposed.

### I. Introduction

The mother of the individual responsible for "commit[ing] a horrific shooting at Club Q in Colorado Springs[,]" (¶ 4)[1], sued five officers of the Colorado Springs Police Department after

---

[1] Citations to paragraph numbers within parentheticals without more, e.g. (¶ __), refer to paragraphs in the Complaint, ECF No. 1.

they secured the apartment she shared with the shooter in the earlier morning hours of November 20, 2022. (¶¶ 16-17). Plaintiff alleges the officers unlawfully searched her house, seized her and retaliated against her for exercising her First Amendment rights. ECF No. 1 at 9-19.

The Complaint is barred by the statute of limitations. Plaintiff's incompetency finding in a criminal proceeding arising out of her interaction with officers on November 20, 2022 does not excuse her untimely filing. Plaintiff is not entitled to statutory or equitable tolling.

Additionally, the complaint does not comply with Rule 8. It only speaks in generalities and conclusions. On the merits, the officers did not search Plaintiff's apartment without a warrant. Officers Anderson and Mandry conducted a protective sweep. When Plaintiff's residence was searched, it was done pursuant to a court-issued warrant. Plaintiff was arrested for disorderly conduct initially and later cited for resisting arrest. Body-worn camera footage clearly shows that the officers had probable cause to charge Plaintiff with disorderly conduct. Probable cause defeats the First Amendment Retaliation claim. The officers are entitled to qualified immunity.

## II. Standard of Review

Rule 8 of the Civil Rules of Procedure requires, *inter alia*, that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." C.R.C.P. 8(a)(2). "[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."

*Id.* (quoting in part *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A limitations defense is reviewed under Rule 12(b)(6). *See Herrera v. City of Espanola*, 32 F.4th 980, 989-91 (10th Cir. 2022).

### III. Argument

#### A. The suit is barred by the statute of limitations

"In a § 1983 action, state law governs issues regarding the statute of limitations and tolling, although federal law governs the determination of when a § 1983 action accrues." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010). Plaintiff's § 1983 action is controlled by Colorado's two-year statute of limitations. *See Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993); *see also* C.R.S. § 13-80-102(1)(i). The burden to show the statute of limitations is tolled rests with the plaintiff. *See Braxton*, 614 F.3d at 1159.

On its face, the suit is barred by the statute of limitations. The alleged unlawful search and seizure occurred on November 20, 2022. (¶¶ 1, 17). The suit was filed on February 17, 2025. ECF No. 1 at 1. A claim of unlawful search and seizure accrues the date of its occurrence. *See Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Claims arising out of police action toward a criminal suspect, such as arrest, interrogation, or search and seizure are presumed to have accrued when the actions actually occur."). A claim for First Amendment Retaliation "accrues when the retaliatory act occurs, at least where the plaintiff is aware of the occurrence." *Sgaggio v. Spurlock*, No. 21-CV-00893-PAB-KMT, 2022 WL 204605, at *7 (D. Colo. Jan. 24, 2022) (listing cases). Anticipating the bar, Plaintiff alleges she was found incompetent during a criminal proceeding after being charged with disorderly conduct and resisting arrest arising out of the events of November 20, 2022. (¶ 8). Plaintiff's alleged

3

incompetence finding during her criminal prosecution is insufficient to toll the statute of limitations.

"The statute of limitations doesn't run against a person who is mentally incompetent and without a legal guardian." *Graham v. Teller Cnty.*, 632 F. App'x 461, 463 (10th Cir. 2015) (unpublished). A person is mentally incompetent if he or she is a "'person with an intellectual and developmental disability', as defined in section 25.5-10-202." C.R.S. § 25.5-10-237(2). "'Person with intellectual and developmental disability' means a person determined by a case management agency to have an intellectual and developmental disability and includes a child with a developmental delay." C.R.S. § 25.5-10-202(26)(b). An "[i]ntellectual and developmental disability" means,

> a disability that manifests before the person reaches twenty-two years of age, that constitutes a substantial disability to the affected person, and that is attributable to an intellectual and developmental disability or related conditions, including Prader-Willi syndrome, cerebral palsy, epilepsy, autism, or other neurological conditions when the condition or conditions result in impairment of general intellectual functioning or adaptive behavior similar to that of a person with an intellectual and developmental disability.

C.R.S. § 25.5-10-202(26)(a).

The unverified complaint alleges "Ms. Voepel is entitled to tolling of [the two-year statute of limitations] because she suffers from a mental disease or defect and was found to be incompetent to proceed to trial for much of those two years [of her criminal prosecution]." (¶ 8). The complaint alleges that Plaintiff underwent a series of competency evaluations during the state court criminal proceedings where she was diagnosed with "Major Depressive Disorder, Posttraumatic Stress Disorder, and Unspecified Anxiety Disorder." (¶ 40(a)).

The allegations fall short of demonstrating circumstances warranting tolling of the limitations period. The complaint does not allege that Plaintiff suffers from a disability meeting

4

the definition of C.R.S. § 25.5-10-202(26)(a). It does not allege Plaintiff is a "[p]erson with intellectual and developmental disability" as defined in C.R.S. § 25.5-10-202(26)(b) who has been "*determined by a case management agency* to have an intellectual and developmental disability . . . ." *Id.* (emphasis added). "A case management agency" is "a Community Centered Board within a designated service area where an applicant or client can obtain case management services." 10 CCR 2505-10 8.600.4.[2] Consequently, Plaintiff is not entitled to statutory tolling.

Nor is Plaintiff entitled to equitable tolling. "Colorado limits equitable tolling to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Graham*, 632 F. App'x at 464–65 (internal quotations marks omitted). "The Colorado Supreme Court has yet to find a case that qualifies as an 'extraordinary circumstance' that would justify tolling." *Braxton*, 614 F.3d at 1161. Summarizing the Colorado Supreme Court's survey of outside jurisdiction's finding of extraordinary circumstances, the Tenth Circuit explained such circumstances may include "a plaintiff who was unable to file a complaint because courts were closed during the Civil War; a court's erroneous enforcement of an unconstitutional statute barring a plaintiff from bringing suit; and a plaintiff who was unable to file because he was held prisoner in Japan during World War II." *Graham*, 632 F. App'x at 465; *see also Devaughn v. Hendenskog*, No. 14-CV-00139-LTB-KLM, 2014 WL 7005827, at *6 n. 5 (D. Colo. Dec. 11, 2014) (identifying findings of extraordinary circumstances).

---

[2] "State administrative regulations are subject to judicial notice." *Allen v. Clements*, 930 F. Supp. 2d 1252, 1259 (D. Colo. 2013). The regulation can be found here:
https://www.sos.state.co.us/CCR/GenerateRulePdf.do?ruleVersionId=7720&fileName=10%20CCR%202505-10%208.600

The Complaint does not allege any of the named Defendants wrongfully impeded Plaintiff's ability to file suit. Nor does the Complaint allege extraordinary circumstances on par with the examples identified by the Colorado Supreme Court. Accordingly, the Complaint is untimely, and it should be dismissed.

### B. The Complaint Does Not Comply with Rule 8

The requirements of Rule 8 have a "greater bite" in the context of § 1983 claims "because [§ 1983 actions] typically include complex claims against multiple defendants." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

Relying on conclusions and speaking in generalities, the complaint repeatedly states that officers searched Plaintiff's residence without consent or a search warrant. *See*, *e.g.*, (¶ 3) ("Defendants searched Ms. Voepel's home without consent or a search warrant"); (¶ 20) ("Defendant Anderson started searching the house without Ms. Voepel's permission."); (¶ 21) ("Defendant Anderson disregarded [the] restriction and continued to search. Defendants Mandry and Join[e]s assisted Defendant Anderson in his search. Defendants Mandry and Join[e]s did not intervene against Defendant Anderson's search."). If a search occurred, it does not explain the areas and contents of the home which were subjected to the search. *See Robbins*, 519 F.3d at 1247 ("[I]f [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (internal quotation marks omitted). Officers Anderson's and Mandry's "search" could just as easily (and, in fact, was) a protective sweep. *See Fishbein ex rel. Fishbein v. City of Glenwood Springs*, 469 F.3d 957, 961 (10th Cir. 2006) ("A protective sweep is a cursory, limited search of a residence or other premises for the sole purpose of securing officers' safety during an arrest or investigation.").

As it relates to Sergeant Crews and Officer Hockersmith, the complaint alleges they knew that they "did not have permission to be inside [Plaintiff]'s home, that there was no warrant to search [Plaintiff]'s home and that [Plaintiff] had revoked consent for any law enforcement officer be in her home." (¶¶ 23, 25). The complaint does not explain how the officers knew that no warrant was issued and that consent was revoked. The officers are deprived of fair notice of the claims against them. *See Robbins*, 519 F.3d at 1250 ("[I]t is particularly important in [a § 1983 suit] that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.") (emphasis in original).

The complaint does not comply with Rule 8. Accordingly, it should be dismissed.

### C. The Officers Are Entitled to Qualified Immunity

"The qualified-immunity doctrine protects public employees from both liability and from the burdens of litigation arising from their exercise of discretion." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quotation marks omitted). "[W]hen [the qualified immunity] defense is raised, the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting in part *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (emphasis in *Quinn*).

### 1. The Officers Were Allowed to Secure the Premises While Awaiting a Search Warrant

Officers responded to the residence to secure it in advance of executing a search warrant.[3] The complaint describes a timeline where officers commenced their efforts to identify Anderson Aldrich's residence around 2 a.m. and places officers at Plaintiff's residence at 3:17 a.m. (¶¶ 17-18). The search warrant was signed by a state magistrate judge at 7:12 a.m. Exhibit A, Search Warrant and Return at 3, 4.

"[A] police officer armed with probable cause to believe a home contains evidence of a serious crime that might otherwise be destroyed may lawfully secure the home and restrict entry while waiting for an assisting officer to diligently procure a search warrant." *United States v. Shrum*, 908 F.3d 1219, 1231 (10th Cir. 2018). In *Illinois v. McArthur*, 531 U.S. 326 (2001), the Supreme Court identified "four circumstances" which supported an officer's decision to restrict access to a trailer over concerns that evidence would be destroyed. *Id.* at 331-33. The Tenth Circuit explained the reasoning in *McArthur*, stating,

> The initial seizure was reasonable because the officers (1) had probable cause to believe that the home contained evidence of a crime and (2) had good reason to fear the destruction of that evidence before the warrant's arrival. And the seizure remained reasonable because (3) the officers made reasonable efforts to reconcile law-enforcement needs with personal-privacy demands and (4) the restraint lasted no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant.

*United States v. Elmore*, 101 F.4th 1210, 1217 (10th Cir. 2024) (cleaned up).

The search warrant reveals the officers' actions were reasonable. In the immediate aftermath of a mass shooting, the officers had reason to believe the home contained evidence and that the evidence could be destroyed. The shooter reportedly lived in the apartment with his mother. Evidence related to the shooting was likely to be found inside, including additional

---

[3] The search warrant may be taken into consideration as a public document when determining officers' claim of qualified immunity. *See Eckert v. Dougherty*, 658 F. App'x 401, 404 n.1 (10th Cir. 2016).

firearms, bullets, items used to carry a firearm, writings and correspondence, audio and/or video home security recordings, and evidence of assistance or conspiracy. Officers had reason to believe evidence of the crimes could be destroyed. Plaintiff was the shooter's mother. She claimed to have last seen the shooter at 10 p.m. when he left to run an errand which should have taken fifteen minutes. Plaintiff claimed the shooter only owned a pocketknife despite the fact the officers knew an assault rifle was used to perpetrate the shooting.[4] The officers had probable cause and a reasonable basis to believe evidence might be destroyed.

The officers balanced their needs with the privacy interests of Plaintiff. This much is reflected in the officers' body-worn camera footage.[5] Initially, the officers allowed Plaintiff to stay inside the apartment. Exhibit B, Body-Worn Camera Footage of Officer Matthew Anderson at 4:45-1:28:03. After experiencing Plaintiff's dramatic emotional swings, which included walking outside and screaming and commanding officers to leave multiple times, the officers briefly locked the door behind Plaintiff after she walked out of the apartment. Exhibit C, Body-Worn Camera Footage of Sergeant Reuben Crews at 24:11-32:50. Plaintiff was left alone outside for approximately 2 minutes and 25 seconds. *Id.* at 32:50-35:15. After Officer Anderson and Sergeant Crews joined Plaintiff, they provided her with socks, shoes and blankets. *Id.* at 37:14-37:24; 40:56-41:01.

---

[4] A later search of the residence uncovered ammunition and sales records for purchase of a firearm, among other items. Exhibit 1 at 11.

[5] "Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). But, the BWC "speak[s] for itself." *Scott v. Harris*, 550 U.S. 372, 378 n. 5 (2009). While the BWC footage is not specifically referenced in the complaint, the entire criminal prosecution of Plaintiff as found in El Paso County Court Case 22M7363 is referenced. ¶ 40. The case was sealed post-dismissal. The BWC footage captures events which clearly contradict the allegations in the complaint.

9

Outside, Plaintiff continued to berate Officer Anderson and Sergeant Crews. Sergeant Crews warned Plaintiff that she would be arrested if she continued to scream. *Id.* at 59:15-59:41; 1:02:28-1:03:07. Plaintiff was arrested for disorderly conduct and resisting arrest. (¶ 39). She was in-custody the remainder of the time needed to write and present a warrant to a judge. *See*, *e.g.*, *Segura v. United States*, 468 U.S. 796, 813 (1984) (finding possessory interest in apartment "virtually nonexistent" when individual was under arrest while awaiting execution of a search warrant).

The officers balanced their law enforcement needs with Plaintiff's privacy rights. The officers acted reasonably in seizing the apartment pending execution of a search warrant.

## 2. The Officers did not Unlawfully Seize or Retaliate against Plaintiff

To plausibly allege an unlawful seizure, Plaintiff must show (1) she was arrested (2) without probable cause. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007).

The BWC reflects that Officer Anderson and Sergeant Crews had probable cause to arrest Plaintiff for disorderly conduct. Disorderly conduct is committed, *inter alia*, when "(1) A person . . . intentionally, knowingly, or recklessly: (c) Makes unreasonable noise in a public place or near a private residence that he has no right to occupy." C.R.S. § 18-9-106.

While Officer Anderson and Sergeant Crews waited outside with Plaintiff, she continued to complain loudly. *See*, *e.g.*, Exhibit C at 57:49-58:26 (Capturing Sergeant Crews on the phone on the second floor while Plaintiff, on the third floor, can be heard yelling in the background). A neighbor opened the door to an adjacent apartment located on the same floor as Plaintiff and

10

connected by a walkway and said, "I'm sorry, but can you guys do something about this." *Id.* at 58:50-59:15. After she closed the door, Sergeant Crews contacted the neighbor. *Id.* at 59:45-1:00:05. He learned that she and her niece were awoken and kept awake by Plaintiff's yelling. *Id.* at 1:00:13-1:01:59. Previously, Sergeant Crews had advised Plaintiff that her behavior was disruptive and disorderly after the neighbor first opened the door.[6] *Id.* at 59:15-59:40. Later, after speaking with the neighbor, Sergeant Crews warned Plaintiff that she would be arrested for disorderly conduct if she continued to speak loudly. *Id.* at 1:02:16-1:02:33; 1:02:58-1:03:26. Plaintiff, confrontational and visibly agitated, continued speaking loudly. *Id.* at 1:03:27-1:03:29. She was arrested. *Id.* at 1:03:30-1:04:35.

> To plausibly allege First Amendment Retaliation, a plaintiff must show:
>
> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotation marks omitted). Probable cause generally defeats Plaintiff's claim of First Amendment Retaliation. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019).

Here, probable cause defeats the claim. Plaintiff was making unreasonable noise—sufficient noise for a neighbor to ask that it stop—in a public place—an apartment walkway. *See* Colo. Jury Instr., Criminal 9-1:11 (Disorderly Conduct) cmt. 2 (referencing jury instruction F:303 which defines "public place" as "a place to which the public or a substantial number of the public has access, and includes but is not limited to highways, transportation facilities, schools, places of

---

[6] Sergeant Crews also advised Plaintiff that she could be arrested for interference or obstruction pursuant to C.R.S. § 18-8-104 if she attempted to reenter the residence. *Id.* at 36:00-36:14.

11

amusement, parks, playgrounds, and the common areas of public and private buildings and facilities."). The retaliation claim should be dismissed.

### 3. Detective Joines, Officer Mandry and Officer Hockersmith did not participate in Plaintiff's arrest

By the time Plaintiff was outside with Officer Anderson and Sergeant Crews, Detective Joines and Officer Mandry had left the scene and were not participants in Plaintiff's arrest. Exhibit B at 57:28-57:31 (Detective Joines leaving apartment); 59:07-59:17 (Officer Mandry leaving apartment). Officer Hockersmith was not involved either. "Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). The unlawful arrest and retaliation claims should be dismissed against Detective Joines, Officer Mandry and Officer Hockersmith.

### 4. The Officers Did Not Violate Clearly Established Law by Securing the Premises and Arresting Plaintiff

The officers did not violate clearly established law. "Ordinarily, to make such a showing of clearly established law in [the Tenth C]ircuit, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021) (cleaned up). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citations omitted).

No Supreme Court or Tenth Circuit precedent places beyond debate the constitutional questions related to securing the scene pending a search warrant, arrest and retaliation. The officers did not immediately remove Plaintiff to seize the property and only removed her after she became verbally combative and loud in the middle of the night in a dense residential setting. No decisional law clearly shows that her arrest was unlawful or that it was in retaliation for Plaintiff's exercise of her First Amendment rights. The officers are entitled to qualified immunity.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Honorable Court enter an order dismissing the Complaint with prejudice, and for any other relief this Court deems appropriate.

Respectfully submitted this 30th day of May, 2025.

OFFICE OF THE CITY ATTORNEY
Wynetta P. Massey, City Attorney


*/s/ W. Erik Lamphere*
W. Erik Lamphere, Division Chief
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Telephone: (719) 385-5909
Facsimile: (719) 385-5535
erik.lamphere@coloradosprings.gov
*Attorneys for Defendants*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

13

**CERTIFICATE OF SERVICE (CM/ECF)**

   I hereby certify that on the 30th day of May, 2025, I electronically filed the foregoing **MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following via email:

Jason M. Kosloski (jkosloski@kosloskilaw.com)
*Attorney for Plaintiff*

              */s/ Eri Howard*
              Eri Howard, Legal Secretary