# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
## Judge Daniel D. Domenico

Civil Action No. 1:25-cv-00506-DDD-KAS

LAURA VOEPEL,

    Plaintiff,

v.

REUBEN CREWS, Colorado Springs Police Department Sergeant;
MATTHEW ANDERSON, Colorado Springs Police Department Officer;
TIMOTHY HOCKERSMITH, Colorado Springs Police Department Officer;
PETER MANDRY, Colorado Springs Police Department Officer; and
REBECCA JOINS, Colorado Springs Police Department Detective,

    Defendants.

## ORDER GRANTING MOTION TO DISMISS

Plaintiff Laura Voepel alleges Defendants Sergeant Reuben Crews, Officer Matthew Anderson, Officer Timothy Hockersmith, Officer Peter Mandry, and Detective Rebecca Joines violated her constitutional rights, bringing claims of unlawful search and seizure, violation of freedom of speech, and retaliation for engaging in protected speech. Doc. 1. ¶¶ 42–138. Defendants have moved to dismiss all seven claims under the statute of limitations, Federal Rule of Civil Procedure 8, and qualified immunity. Doc. 24. I find the complaint has not plausibly established entitlement to tolling of the statute of limitations period and grant the motion without reaching the other arguments.

## LEGAL STANDARD

In Section 1983 actions such as this, "state law governs issues regarding the statute of limitations and tolling, although federal law

- 1 -

governs the determination of when a § 1983 action accrues." *Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010) (citing *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)). "Under Colorado law, once a defendant asserts a statute-of-limitations defense, a plaintiff bears the burden of establishing the statute should be tolled." *Graham v. Teller Cnty., Colo.*, 632 F. App'x 461, 463 (10th Cir. 2015) (citing *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 855 (Colo. 1992)). "[A] district court can properly dismiss the action under Rule 12(b)(6)" if a plaintiff fails to "plead sufficient factual matter to plausibly establish entitlement to tolling." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (internal quotations and citation omitted). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## BACKGROUND

On November 19, 2022, Ms. Voepel's son murdered multiple people at Club Q in Colorado Springs. Doc. 1. ¶ 15. After he was in custody, Colorado Springs police officers arrived at Ms. Voepel's house at approximately 3:17 AM on November 20, 2022, without a search warrant. *Id.* ¶¶ 17–19. At the time, Ms. Voepel did not know about the shooting. *Id.* ¶ 16. She invited Officers Anderson and Mandry and Detective Joines inside her home. *Id.* ¶ 19.

According to the complaint, Officer Anderson searched the home, disregarding Ms. Voepel's stating she did not give permission to be anywhere but "immediately inside the front door." *Id.* ¶¶ 20–21. Detective Joines and Officer Mandry then blocked Ms. Voepel's movement to

facilitate Defendant Anderson's search. *Id.* ¶ 21. Ms. Voepel revoked her permission to be in her home but Defendants remained. *Id.* ¶ 22.

Sergeant Crews and Officer Hockersmith later arrived and entered the home knowing they did not have permission to be inside, there was no warrant to search the home, and Ms. Voepel had revoked her consent for law enforcement to be in her home *Id.* ¶¶ 23, 25. Neither intervened against the allegedly unlawful seizure of Ms. Voepel or search of her home. *Id.* ¶¶ 24–25. All Defendants directly participated in the search of the home and seizure of Ms. Voepel inside it. *Id.* ¶ 27.

Ultimately, Sergeant Crews ordered the other Defendants to lock Ms. Voepel outside her home. *Id.* ¶ 28. Officer Hockersmith did so and then, along with other officers, remained inside the home. *Id.* Locked outside her home, Ms. Voepel grew upset. *Id.* ¶ 31. She alleges that despite knowing they had no probable cause to arrest her for disorderly conduct, Defendants did so, with at least Sergeant Crews and Officer Anderson using excessive force and falsely claiming Ms. Voepel resisted arrest. *Id.* ¶¶ 33–38.

Ms. Voepel defended against criminal resisting arrest and disorderly conduct charges for two years. *Id.* ¶¶ 39–40. During this criminal case, three doctors opined "she was incompetent to proceed" and "many months of restoration services were attempted." *Id.* ¶ 40. The state court dismissed that case after the statute of limitations in this case passed. *Id.* ¶ 41.

## DISCUSSION

The parties agree that Colorado's two-year statute of limitations governs Ms. Voepel's Section 1983 action. *See Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993); *see also* Colo. Rev. Stat. § 13-80-102(1)(i). Ms. Voepel filed this action on February 17, 2025—over two years after the

alleged constitutional violations occurred on November 20, 2022,[1] so the parties also agree that absent tolling, this statute of limitations bars the suit. Doc. 24 at 3; Doc. 28 at 3; *see also* Doc. 1 ¶ 41. They disagree, however, on whether the complaint "plausibly establish[es] entitlement to tolling." *Graham*, 632 F. App'x at 463 (citing *Iqbal*, 556 U.S. at 678); *compare* Doc. 24 at 3–6 *and* Doc. 34 at 1–4, *with* Doc. 28 at 3–7. It does not.

## I.    Statutory Tolling

The statute of limitations does not "run against a person who is mentally incompetent and without a legal guardian." *Graham*, 632 F. App'x at 463 (citing Colo. Rev. Stat. §§ 13-81-101, 13-81-103). "For purposes of Colorado's tolling provision, an individual is mentally incompetent if he or she is 'a person with an intellectual and developmental disability'" which is defined as "a person determined by a case management agency to have an intellectual and developmental disability and includes a child with a developmental delay." *Graham*, 632 F. App'x at 463–64 (internal citations omitted); Colo. Rev. Stat. §§ 25.5–10–237(1), 25.5–10–202(26)(b). A case management agency is "a public or private not-for-profit or for-profit organization contracted with the state of Colorado to provide case management services and activities." Colo. Rev. Stat. §§

---

[1] "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of h[er] action." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (internal quotations and citation omitted). "Claims arising out of police actions toward a criminal suspect, such as arrest, . . . search and seizure, are presumed to have accrued when the actions actually occur." *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991). A "retaliation claim accrues when the retaliatory act occurs, at least where the plaintiff is aware of the occurrence." *Sgaggio v. Spurlock*, No. 21-cv-00893-PAB-KMT, 2022 WL 204605, at *7 (D. Colo. Jan. 24, 2022) (collecting cases).

- 4 -

25.5-6-1702(2), 25.5-10-202(1.9). An "intellectual and developmental disability" is:

> a disability that manifests before the person reaches twenty-two years of age, that constitutes a substantial disability to the affected person, and that is attributable to an intellectual and developmental disability or related conditions, including Prader-Willi syndrome, cerebral palsy, epilepsy, autism, or other neurological conditions when the condition or conditions result in impairment of general intellectual functioning or adaptive behavior similar to that of a person with an intellectual and developmental disability.

Colo. Rev. Stat. § 25.5–10–202(26)(a). Ms. Voepel does not dispute that her complaint does not allege she manifested "an intellectual and developmental disability" before twenty-two years of age, does not allege "a case management agency" determined she has "an intellectual and developmental disability," and does not otherwise allege she has "an intellectual and developmental disability" pursuant to Colo. Rev. Stat. § 25.5–10–237. Docs. 1, 28. Thus, the complaint does not plausibly establish entitlement to statutory tolling. *See Graham*, 632 F. App'x at 463 (citing *Iqbal*, 556 U.S. at 678).

## II.   Equitable Tolling

Equitable tolling is rarely available under Colorado law. *See, e.g.*, *Colby v. Lundquist*, No. 22CA1913, 2024 WL 3797491, at *4 (Colo. App. Jan. 11, 2024) (equitable tolling applies "[i]n rare situations" (internal citation omitted)); *Dragoman v. Midwest Hose & Specialty, Inc.*, No. 19-cv-01581-RBJ, 2020 WL 7043864, at *3 (D. Colo. Dec. 1, 2020) ("Colorado courts have repeatedly held that these circumstances are limited." (internal citation omitted)). In fact, the Colorado Supreme Court recently emphasized that "the doctrine of equitable tolling is disfavored." *Brown v. Walker Com., Inc.*, 521 P.3d 1014, 1021–22 (Colo. 2022). Colorado "limits" the doctrine to two situations: "either the defendant has

wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Graham*, 632 F. App'x at 464–65 (quoting *Braxton*, 614 F.3d at 1159 (quoting *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996) (en banc))). "This standard is far higher than that for excusable neglect." *Brown*, 521 P.3d at 1022 n.5. It "only applies when all its elements are clearly shown." *Elk Creek Ranch Owners Ass'n v. Wheeler*, No. 21CA0426, 2022 WL 22924498, at *6 (Colo. App. June 23, 2022). Here, Ms. Voepel argues the second equitable tolling situation applies and thus must "clearly show[]" two elements: (1) "truly extraordinary circumstances prevented [her] from filing [] her claim" and (2) "despite diligent efforts." *Graham*, 632 F. App'x at 464–65 (internal citations omitted); *Elk Creek Ranch Owners Ass'n*, 2022 WL 22924498, at *6.

### A.     Extraordinary Circumstances

The complaint alleges in relevant part that Ms. Voepel is "entitled to tolling . . . because she suffers from a mental disease or defect and was found to be incompetent to proceed to trial for much of those two years. . . . Ms. Voepel's lengthy period of legal incompetency is an extraordinary circumstance that justifies equitable tolling."[2] Doc. 1 ¶ 8. It asserts three doctors found her "incompetent to proceed," citing their findings made on July 14, 2023, November 24, 2023, March 25, 2024, and November 22, 2024. Doc. 1 ¶ 40. The first "diagnosed Ms. Voepel with Major Depressive Disorder, Posttraumatic Stress Disorder, and Unspecified

---

[2] Paragraph 8 also alleges Ms. Voepel is "entitled to equitable tolling because the Defendants impeded her ability to pursue this case through charging her with crimes that were ultimately dismissed" but she did not raise this argument in her Response and, in any event, it is inconsistent with the arguments she did raise. *Compare* Doc. 1 ¶ 8, *with* Doc. 28.

- 6 -

Anxiety Disorder" and found she has "a mental disability or developmental disability that prevents her from having sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding in order to assist in her defense or prevents her from having a rational and factual understanding of the criminal proceedings." *Id.* The second found her condition deteriorated. *Id.* The last two continued to find Ms. Voepel "incompetent to proceed."[3] *Id.*

Ms. Voepel attempts to distinguish these allegations from those in the Tenth Circuit case *Graham*, 632 F. App'x 461. Doc. 28 at 4–6. But they are similar, particularly the diagnoses and medical opinion:

> Mr. Graham was unable to timely file this cause of action due to the fact [1] he was psychologically unstable as a result of the assault, (2) he was hospitalized for several days; (3) he is psychologically, emotionally, or physically unable to deal with the assault; (4) he suffers from post-traumatic stress disorder, personality disorder, sleeplessness, and flashbacks; (5) he has difficulty maintaining employment and concentrating; and (6) he suffered from nightmares. Mr. Graham's treating psychiatrist asserts that (1) he diagnosed Mr. Graham as suffering from post-traumatic stress disorder, personality disorder, and major depression; and (2) Mr. Graham was disabled as a result of the post-traumatic stress disorder, personality disorder, and major depression and is unable to make legal decisions.

*Graham*, 632 F. App'x at 464. Like Mr. Graham, Ms. Voepel "cites no authority supporting h[er] contention that h[er] alleged conditions [Major Depressive Disorder, Posttraumatic Stress Disorder, and Unspecified Anxiety Disorder] constitute an extraordinary circumstance under Colorado law." *Id.* at 465. As the Tenth Circuit noted, "[p]erhaps this is

---

[3] To the extent the complaint alleges that Dr. Ewing opined on November 22, 2024 "that there is no substantial probability that she will be (or even could be) restored to competency in the foreseeable future," this seems potentially inconsistent with Ms. Voepel filing the complaint three months later on February 17, 2025. Doc. 1 ¶ 40.

because '[t]he Colorado Supreme Court has yet to find a case that qualifies as an 'extraordinary circumstance' that would justify tolling.'" *Id.* (quoting *Braxton*, 614 F.3d at 1161); *cf. Tapps v. Greyhound Lines, Inc.*, No. 18CA1566, 2019 WL 13575661, at *3 (Colo. App. Aug. 1, 2019) ("Other jurisdictions have recognized equitable tolling when extraordinary circumstances made it impossible for a claim to be timely filed . . . .").

Also like *Graham*, "the circumstances [Ms. Voepel] relies on don't rise to the level of those Colorado has suggested might justify equitable tolling under its extraordinary-circumstances test." *Id.* (citing *Dean Witter Reynolds, Inc.*, 911 P.2d at 1097). In *Dean Witter Reynolds*, the Colorado Supreme Court described other jurisdictions' application of equitable tolling because of "extraordinary circumstances": "where courts in southern states were closed during Civil War"; "where district court's erroneous enforcement of an unconstitutional statute barred plaintiff from filing claims in a timely manner"; and "plaintiff's internment by Japan during World War II tolled limitations period on his claim arising immediately prior to his internment"). 911 P.2d at 1097 (internal citations omitted). It is also unlikely Colorado law would recognize mental health issues as "extraordinary circumstances" when it has a statute addressing these issues, particularly circumstances that do not satisfy this specific and limited statute, *see supra* § I.

As in *Graham*, the allegations here, even if true, do not meet the high standard for extraordinary circumstances under Colorado law. 632 F. App'x at 464–65.

### B. Diligent Efforts

Even if Ms. Voepel had adequately shown extraordinary circumstances, equitable tolling still would not apply because she has not demonstrated that she made "diligent efforts" to pursue her claims when

- 8 -

possible during the limitations period. *Graham*, 632 F. App'x at 464–65 ("truly extraordinary circumstances prevented the plaintiff from filing his or her claim *despite diligent efforts.*" (emphasis added) (internal citation omitted)); *Dean Witter Reynolds*, 911 P.2d at 1097 ("The reasoning underlying these cases is that it is unfair to penalize the plaintiff for circumstances outside his or her control, *so long as the plaintiff makes good faith efforts to pursue the claims when possible.*" (emphasis added) (internal citations omitted)).

The complaint does not address Ms. Voepel's competency or otherwise purported inability to file suit during the first several months of the limitations period—between November 20, 2022 (the day of the incident at issue) and July 13, 2023 (the day before the first medical opinion and diagnoses). Doc. 1. It also seems to suggest she waited until her criminal case ended to file the instant civil suit. *Id.* ¶ 4 ("Ms. Voepel brings this complaint to seek justice for . . . the unconstitutional prosecution that the Defendants set in motion which required Ms. Voepel to spend nearly two years being traumatized before the case was finally dismissed."); *id.* ¶ 40 ("Ms. Voepel's criminal case was not dismissed until after the statute of limitations passed in this case."). "Colorado courts have repeatedly found no extraordinary circumstances where plaintiffs wait to file their claims because they are awaiting judicial outcomes in related cases." *Dragoman*, 2020 WL 7043864, at *4 (collecting cases); *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 150 (Colo. 2007) (en banc) ("[W]e have repeatedly held that awaiting the result of another case or another legal proceeding is not the type of 'extraordinary circumstance' necessary to equitably toll the statute of limitations."). Thus, the complaint does not show Ms. Voepel made "diligent efforts" to pursue her claims when possible during the limitations period. *Dean Witter Reynolds*, 911 P.2d at 1097 (internal citations omitted).

Because the complaint does not "plausibly establish entitlement to [equitable] tolling," this rare doctrine does not apply. *Graham*, 632 F. App'x at 463 (citing *Iqbal*, 556 U.S. at 678). As Ms. Voepel conceded, without tolling, the statute of limitations bars her complaint. Doc. 28 at 3. I need not reach the rest of Defendants' arguments and grant the motion.

## CONCLUSION

It is **ORDERED** that:

Defendants' Motion to Dismiss, **Doc. 24**, is **GRANTED**; and

The case is **DISMISSED WITH PREJUDICE**.

DATED: January 2, 2026    BY THE COURT:

~~Daniel~~ D. Domenico
United States District Judge